UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JAYVON R. FLEMMING,

Plaintiff,

v. Case No. 26-cv-438-pp

JENNA HILAND, *et al.*,

Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Jayvon Flemming, who is incarcerated at Waupun Correctional Institution and is representing himself, filed this case under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal and state law. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his amended complaint, dkt. no. 7.

## I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 20, 2026, the court ordered the plaintiff to pay an initial partial filing fee of $1.08. Dkt. No. 5. The court received that fee on April 28, 2026. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Amended Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter C'nty Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. C'nty of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff sues Dr. Justin Ribault, Nurse Victoria Lancour, Dr. Laura Sukowaty, HSU Manager Jenna Hiland, Nurse Rachael Sabotta, Nurse Kataryna Krainyk, Nurse Theresa Welcher, PSU Supervisor Tori Van Buren, PSU Staff Member Casey Roca, Nurse Joseph Rocha, Nurse Brenda Dorau-Roehrborn, Institution Complaint Examiner M. Pitchford, Security Director Jeremy Beck, Deputy Warden A. Kraus, Warden Brad Mlodzik, Dr. Karen

Reynolds, Waupun Memorial Hospital and Waupun Correctional Institution. Dkt. No. 7 at ¶¶3-20.

The plaintiff alleges that on August 8, 2025, he attempted suicide at Waupun Correctional Institution by cutting his arm and swallowing six razor blades. Id. The plaintiff states that an ambulance took him to Waupun Memorial Hospital where a chest X-ray showed at least three razor blades. Id. at ¶¶23-24. While at the hospital, the plaintiff allegedly told defendant Dr. Reynolds that he tried to kill himself by swallowing six razor blades and cutting himself. Id. at ¶45. The plaintiff allegedly told Dr. Reynolds that he was in pain and that his stomach was hurting badly. Id. The plaintiff alleges that Reynolds told him that he would have to deal with the pain, that she would not remove the razor blades and that they should pass on their own. Id. The plaintiff states that he reiterated he believed the razor blades were causing him severe stomach pain and that they needed to be removed. Id. He asserts that he returned to prison with the razor blades left inside of him. Id.

The plaintiff alleges that he returned to Waupun with a recommended care treatment plan from the hospital that said, "Plaintiff should return to the UC/ER if new symptoms occur and or if symptoms worsen," and "I shared decision-making in regards to risks specific to patient's care disposition and interventional in discussion with the patient's caregivers." Id. at ¶28.

The plaintiff alleges that when he arrived back at Waupun, he was placed in five-point bed restraints during which time he told staff that his stomach hurt badly, he felt like the razor blades were cutting his stomach and he

needed medical help. Id. at ¶26. The plaintiff states that he told defendant PSU Roca that he couldn't be strapped down because it was causing pain and he needed to return to the hospital. Id. The plaintiff states that nothing was done for his pain. Id.

The plaintiff alleges that on August 9, 2025, the health services unit (HSU) was notified that the plaintiff was having chest pain, severe stomach pain and dizziness. Id. at ¶29. Nurse Lancour allegedly saw the plaintiff but denied him adequate medical treatment and did not follow the recommended treatment plan. Id. The plaintiff alleges that on that same day, defendant Nurse Welcher saw him based on complaints that he was vomiting blood, but also denied him adequate medical treatment. Id. at ¶30.

The plaintiff alleges that on August 10, 2025, he asked to be sent to the hospital for surgery to remove the razor blades. Id. The plaintiff states that he was vomiting blood and had stomach and chest pain and Dr. Ribault allegedly refused to send the plaintiff to the hospital for treatment or follow the recommended treatment plan.[1] Id.

The plaintiff alleges that on August 11, 2025, Lancour saw him for severe stomach and chest pain. Id. at ¶31. Lancour allegedly denied the plaintiff adequate medical care and did not follow the recommended treatment care plan. Id.

[11] The plaintiff also states that Nurse Bukouras denied him medical treatment. Id. at ¶30. But the plaintiff is no longer suing Bukouras; he says that he amended the complaint to remove Bukouras from the case. Id. at p.1.

The plaintiff alleges that on August 13, 2025, defendant Nurse Dorau-Roehrborn saw him for stomach pain, chest pains, dizziness and nausea. Id. at ¶33. She allegedly knew about the razor blades in the plaintiff's stomach but did not provide him with medical treatment. Id.

The plaintiff alleges that on August 14, 2025, defendant Nurse Sabotta saw him for chest pain, stomach pain, nausea and vomiting blood. Id. at ¶34. Sabotta allegedly knew that the plaintiff had razor blades inside of him and about the recommended treatment plan, but she did not provide him with medical care. Id. That same day, the plaintiff allegedly told Nurse Krainyk that he wanted to be seen for stomach pain and spitting up blood. Id. at ¶39. The plaintiff states that he begged for help and to be sent to the hospital, but Krainyk allegedly disregarded the recommended treatment plan and denied him reasonable medical care. Id.

The plaintiff alleges that on August 16, 2025, Sabotta saw him for complaints of chest pain, stomach pain and vomiting, and she again denied him adequate medical care. Id. at ¶35. The next day, August 17, 2025, Lancour allegedly saw the plaintiff for complaints of stomach pain, chest pain, vomiting blood and having blood in his stool, and she also denied him adequate medical care. Id. at ¶36.

The plaintiff alleges that on August 18, 2025, he experienced severe stomach and chest pain and asked to be seen by the HSU. Id. at ¶37. Security staff allegedly reported the plaintiff's concerns to the HSU numerous times

throughout the day. Id. The plaintiff states that eventually at about 12:30 a.m., Sabotta saw the plaintiff, and he told her about his medical concerns. Id.

The plaintiff alleges that on August 19, 2025, he returned to the hospital after vomiting blood and complaining of stomach and chest pain. Id. at ¶38. The plaintiff states that he was given a CAT scan and "X-ray procedure" to remove the rest of the razor blades, and he also had a blood transfusion. Id. at ¶47. The plaintiff alleges that on August 24, 2025, he discharged from the hospital, returned to Waupun and "the defendant" left a razor blade inside of him after it was clear that the razor blades were causing pain with possible internal bleeding. Id. at ¶50.

The plaintiff alleges that from August 24 until at least September 2, 2025, HSU staff knew that he still had at least one razor blade inside of him causing severe stomach pain, chest pain, vomiting blood and other medical related complications. Id. at ¶51.

The plaintiff alleges that between August 8 and September 2, 2025, he contacted defendant HSU Manager Hiland numerous times asking for help and medical treatment. Id. at ¶40. He states that he wrote her request slips between asking her to address the fact that her staff was not following the recommended treatment care plan. Id. Hiland allegedly disregarded the plaintiff's medical issues. Id.

The plaintiff alleges that defendants Warden Mlodzik, Security Director Beck and Deputy Warden Kraus received numerous interview request slips begging for help with the plaintiff's medical issues. Id. at ¶41. The request slips

allegedly explained that the HSU was trying to kill the plaintiff by ignoring his medical issues and complications related to swallowing six razor blades. Id. The plaintiff states that Mlodzik, Beck and Kraus did not help him. Id.

The plaintiff alleges that defendant Pitchford rejected three inmate complaints the plaintiff submitted in order to cover up the misconduct by security staff and the HSU. Id. at ¶42. The plaintiff states that Pitchford also dismissed the plaintiff's inmate complaint to deny him access to adequate medical treatment. Id. at ¶43.

The plaintiff claims that all the defendants violated his constitutional rights because they failed to properly treat his medical condition stemming from swallowing razor blades. Id. at ¶21. The plaintiff also claims that Dr. Reynolds and Waupun Memorial Hospital's conduct amounted to negligence and medical malpractice in violation of Wisconsin state law. Id. at ¶22. For relief, the plaintiff seeks compensatory and punitive damages. Id. at ¶¶53-56.

C. Analysis

The plaintiff sues Waupun Correctional Institution. A state prison is not a "person" that may be sued under § 1983. Myers v. Ind. Dep't of Corr., 655 F. App'x 500, 503 (7th Cir. 2016) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989)). The court could construe this claim as if the plaintiff had made it against the State of Wisconsin, see Will, 491 U.S. at 71, but a state may not be sued for damages, Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th

Cir. 2003), and damages are the only viable relief the plaintiff seeks. The court will dismiss Waupun.

"The Eighth Amendment's ban on 'cruel and unusual punishments' obligates prison officials to provide medical care to prisoners in their custody." Sanders v. Moss, 153 F.4th 557, 567 (7th Cir. 2025) (quoting Dean v. Wexford Health Sources, Inc., 18 F.4th 214, 234 (7th Cir. 2021)); see also Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official's "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. Sanders, 153 F.4th at 567 (quoting Estelle, 429 U.S. at 104. The plaintiff must satisfy two prongs to prove a deliberate indifference claim. First, he must show that he suffers from an "objectively serious medical condition." Id. (quoting Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*)). The plaintiff also must establish that the prison official acted with a "sufficiently culpable state of mind." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)); see also Wilson v. Seiter, 501 U.S. 294, 297 (1991). "A prison official has a sufficiently culpable state of mind when the official 'knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk.'" Sanders, 153 F.4th at 568 (quoting Farmer, 511 U.S. at 834).

The plaintiff has sufficiently alleged that he suffered from an objectively serious medical condition. See Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."). The

court will allow the plaintiff to proceed on an Eighth Amendment claim against defendants Roca, Lancour, Welcher, Ribault, Dorau-Roehrborn, Sabotta and Krainyk based on allegations that they did not provide him with adequate medical care after he swallowed razor blades. The plaintiff also may proceed against Hiland, Beck, Kraus, Mlodzik and Pitchford based on allegations that they disregarded his requests for treatment and complaints that he was not receiving medical care. Id.

The plaintiff also may proceed on an Eighth Amendment medical care claim based on allegations that Dr. Reynolds, who treated him at the hospital, disregarded the risk of harm to the plaintiff by returning him to Waupun with razor blades in his stomach. See Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 831-32 (7th Cir. 2009) (Nongovernmental health care providers that serve incarcerated individuals may be liable under §1983 if they acted in the stead of state in providing medical care.). The court will exercise supplemental jurisdiction over the plaintiff's state law medical malpractice claims against Dr. Reynolds and Waupun Memorial Hospital. See 28 U.S.C. §1367(a).

Because the complaint does not contain any allegations against defendants Dr. Laura Sukowaty, Tori Van Buren and Joseph Rocha, the court will dismiss these defendants.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Laura Sukowaty, Tori Van Buren, Joseph Rocha and Waupun Correctional Institution.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Justin Ribault, Victoria Lancour, Jenna Hiland, Rachael Sabotta, Kataryna Krainyk, Theresa Welcher, Casey Roca, Brenda Dorau-Roehrborn, M. Pitchford, Jeremy Beck, A. Kraus and Brad Mlodzik. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the amended complaint within sixty (60) days.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Dr. Karen Reynolds and Waupun Memorial Hospital under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee. The court **ORDERS** defendants Reynolds and Waupun Memorial Hospital to file a responsive pleading to the amended complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$348.92** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[2] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 29th day of October, 2026.

**BY THE COURT:**



**HON. PAMELA PEPPER**
**Chief United States District Judge**